Celeste **TAYLOR, Richard King, Richard D. McWilliams, Tim Stevens, Constance Parker, Wali Jamal Abdullah, Robert Alan Robertson, and People for the American Way, Plaintiffs,**

v.

Dan **ONORATO, Allegheny County Chief Executive, Pedro A. Cortes, Secretary of the Commonwealth, Harry Vansickle, Commissioner, Pennsylvania Bureau of Legislation, Elections, and Commissions, The Allegheny County Board of Elections, James M. Flynn Jr., County Manager for Allegheny County, Wan J. Kim, Assistant Attorney General, Alberto Gonzales, Attorney General for the United States, Defendants.**

Civil Action No. 06–481.

United States District Court, W.D. Pennsylvania.

April 28, 2006.

---

Gregory M. Harvey, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, Harry P. Litman, Litman Law Firm, Jay K. Reisinger, Reich, Alexander & Reisinger, Thomas J. Farrell, Valerie M. Antonette, Reich, Alexander, Reisinger & Farrell, LLC, Pittsburgh, PA, for Plaintiffs.

*BENCH MEMORANDUM*

LANCASTER, District Judge.

The parties are familiar with the claims, defenses, and history of this case; therefore, they need not be detailed here. I need only state that plaintiffs are seven registered Allegheny County, Pennsylvania voters and an advocacy group, "People For The American Way." Defendants are several federal, state, and county officials and agencies. Plaintiffs seek, *inter alia,* an order enjoining defendants from switching from a lever style voting machine system to a touch screen electronic based system, manufactured by ES & S and called the iVotronic DRE (the "iVotronic"), for the upcoming May 16, 2006, primary election. Plaintiffs contend that unless de-

fendants are enjoined, registered voters in Allegheny County will be irreparably harmed in violation of the Help America Vote Act of 2002, 42 U.S.C. § 15301 *et seq.*, the Americans With Disabilities Act 42 U.S.C. § 12101 *et seq.*, the Rehabilitation Act, 29 U.S.C. § 574, and the First, Fifth, and Fourteenth Amendments to the United States Constitution.

■ In order to obtain a preliminary injunction plaintiffs must demonstrate: 1) a reasonable likelihood of ultimate success on the merits; 2) that irreparable harm would result if the relief is not granted; 3) that issuance of the injunctive relief would not result in greater harm to the non-moving party; and 4) that the public interest would best be served by granting the relief. *Continental Group, Inc., v. Amoco Chem. Corp.*, 614 F.2d 351, 356–57 (3d Cir.1980).

A preliminary injunction is not a matter of right. A district court's decision to issue a preliminary injunction is committed to the court's sound discretion. The Court of Appeals for the Third Circuit has held, however, that a preliminary injunction must be denied, unless the moving party can demonstrate both a likelihood of success on the merits and the probability of irreparable harm if relief is not granted. *Morton v. Beyer*, 822 F.2d 364, 367 (3d Cir.1987). Because I find that plaintiffs are not likely to succeed on the merits on any of their claims, the motion is denied.

■ Plaintiffs' primary basis for this suit is section 301 of the Help America Vote Act, which I will refer to as either section 301 or "the Act." I find that Congress did not intend to provide for a private right of action to enforce section 301. Rather, Congress empowered the Attorney General of the United States to enforce it.

Section 301 provides, in substance, that participating states must ensure that local voting jurisdictions have voting systems in place that comply with certain mandated features for all federal elections taking place after January 1, 2006. 42 U.S.C. § 15481. In order to assist participating states in complying with the Act, the Federal Election Assistance Commission has provided federal funds to be used to purchase new voting machines. The Commonwealth of Pennsylvania received approximately 23 million dollars, of which in excess of 4 million was allocated to Allegheny County. There is no dispute that the lever style voting machines Allegheny County has used for the past several decades fail to comply with the mandates of section 301. The iVotronic system, on the other hand, has been certified by the Secretary of the Commonwealth of Pennsylvania, as well as several other states, as meeting the requirements of section 301 of the Act. Moreover, in excess of 30 other Pennsylvania counties, in addition to Allegheny County, have purchased iVotronics for use in the May 16, 2006 primary election.

The Act does not provide a private right of action to enforce the mandates of section 301. Plaintiffs contend, however, that section 301 of the Act creates a federal right enforceable against state officials under 42 U.S.C. § 1983. In this regard, the Supreme Court decision in *Gonzaga University v. Doe*, 536 U.S. 273, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002), is controlling. There, the Supreme Court held that there is no private right of action to enforce this type of statute unless Congress, in a clear voice and unambiguously, confers a right to a private cause of action. *Id.* at 280, 122 S.Ct. 2268. Nowhere in section 301 or elsewhere in the Act, does Congress indicate an intention that section 301 may be enforced by private individuals.

The Supreme Court also noted that, in legislation enacted pursuant to Congress's spending power, the typical remedy for a

jurisdiction's non-compliance with federally imposed mandates, is not a private cause of action for enforcement. Rather, the appropriate remedy is an action by the federal government to discontinue funds to the jurisdiction. *Gonzaga*, 536 U.S. at 280, 122 S.Ct. 2268. That is exactly the enforcement scheme Congress set forth in the Act. Section 401 of the Act states unambiguously that if a jurisdiction is out of compliance with section 301, the Attorney General of the United States may bring a civil action against it in the appropriate United States District Court for declaratory and injunctive relief as may be necessary to enforce the mandates of section 301. 42 U.S.C. § 15511. Had Congress intended to allow any registered voter to also bring a claim to enforce section 301 it would have clearly said so. Moreover, the only sanction Congress provided for non-compliance with section 301 is the return of the money that was allocated or promised to the jurisdiction for the purchase of the voting machines. 42 U.S.C. § 15542(c).

The Supreme Court also stated that whether Congress intended to create a private right of action enforceable under section 1983 is definitively answered in the negative where a statute, by its terms, grants no private rights to any identifiable class of people. *Gonzaga*, 536 U.S. at 284, 122 S.Ct. 2268. In other words, a private right of action will only be recognized for violations of federal rights not simply federal laws. Here, section 301 does not grant any private rights to an identifiable class of people. Rather, section 301 imposes an obligation on the states and local jurisdictions to put in place a voting system that meets certain criteria. The voters as a whole may benefit from the mandates of section 301. That is insufficient, however, to create a federal "right" as that term is defined by the Supreme Court.

The Supreme Court also instructs that we may not recognize an implied private right of action unless the statute also provides a private remedy. *Gonzaga*, 536 U.S. at 284, 122 S.Ct. 2268. The Act provides no private remedy for a violation of Section 301. Again, the only remedy available for a violation of section 301 is that the jurisdiction must return the money to the Federal Election Assistance Commission. Congress provided no private remedy for individuals for non-compliance with section 301.

Although not dispositive, I also find it instructive that Congress did provide a procedure for individuals who feel aggrieved under the Act to seek redress. Under section 402 of the Act, Congress requires all states receiving payments under this program to establish and maintain a state based administrative complaint procedure. 42 U.S.C. § 15512. The Commonwealth of Pennsylvania has established such a procedure. Under that procedure any voter who believes that he has been aggrieved by a violation of any provision of the Act may file a complaint. An administrative hearing then takes place. And, if after an administrative hearing, the Commonwealth determines that there has been a violation, the Commonwealth shall provide the appropriate remedy.

Finally, the authorities relied on by plaintiffs pertain to section 302, are clearly distinguishable, both factually and legally, and are not controlling.

■ Nor do I find that plaintiffs' constitutional claims are likely to succeed. Their claims are based on a potential series of events that may not happen as plaintiffs predict; indeed, may not happen at all. Principally, plaintiffs contend that one or more of the electronic machines may malfunction on election day causing delays and voter frustration or otherwise not give a correct tally. Second, plaintiffs contend

that the county poll workers and the voters may not be sufficiently educated by election day as to how the electronic machines work, resulting in miscast votes and/or incorrectly tabulated votes.

As to the first, it is of course possible that one or more of the electronic machines may malfunction on election day, just as the lever machines in the past have from time-to-time malfunctioned on election day. No election system is perfect and no machine built by man is infallible. Voting machine malfunction has been, and probably always will be, a potential problem in every election.

Nor am I persuaded by plaintiffs' prediction that poll workers and voters will be unable to successfully adapt to the new technology by election day. The County has a proactive and well organized plan to educate poll workers and the voters on how to use the touch screen election machines. The plan was outlined in a press release from County Executive Dan Onorato dated April 19, 2006. In fact, poll worker training sessions, voter demonstrations, and other forms of community outreach, including an interactive demonstration on the Allegheny County website, have already begun. Plaintiffs have presented no persuasive evidence that these efforts will be unsuccessful, nor have they shown that the County cannot adequately train poll workers and educate voters in the upcoming weeks before the election.

Of greater significance, however, and contrary to plaintiffs' assertions, the demonstration conducted in the courtroom showed that voting on the iVotronic machine is not at all complicated. The directions were clear, easy to understand, and easy to follow. In fact, voting on this machine is no more complicated than and is very similar in operation to the touch screen check-in kiosks at the Greater Pittsburgh International Airport, or a common ATM machine, both of which have been successfully used by Allegheny County residents for years.

Regardless of the voting system used, however, there will always exist the possibility that a voter will not follow directions and will make a mistake. There is no reason for the court to find, however, that the qualified voters and the selected poll workers of Allegheny County, collectively or individually, lack the intellectual ability to follow clearly stated directions or to adapt to new technology. Nor does it follow that plaintiffs' unwarranted distrust of the ability of the electorate compels a conclusion that defendants' introduction of new voting technology will lead to a violation of the Constitution.

■ Nor does the evidence support the conclusion that switching to the touch screen electronic voting machines will have a discriminatory effect on disabled voters. Although it is not disputed that some disabled persons will be unable to vote privately and independently on the electronic machines, it is clear that they will not be deprived of their fundamental right to vote. In fact, disabled persons cannot vote privately and independently on the lever machines either. It cannot be disputed that casting a vote privately and independently is preferred over casting a vote with assistance. However, neither the Americans With Disabilities Act nor the Rehabilitation Act require an accommodation that enables disabled persons to vote in a manner that is comparable in every way with the manner in which persons without disabilities vote. Rather, the statutes mandate only that disabled persons are given the opportunity to vote. Nothing in either statute or their regulations reflects an intention on the part of Congress to require private, independent voting.

Because I find that plaintiffs have failed to demonstrate a likelihood of ultimate success on the merits, I could stop here,

and not consider the other factors necessary for granting a preliminary injunction. However, I think it is important to note that in this case, the public interest would not be advanced by granting plaintiffs' request for injunctive relief.

Indeed, if I were to grant plaintiffs the relief sought, Allegheny County will be forced to either not hold an election, or assuming lever machines could be readied in time—clearly an unrealistic assumption—hold the election with lever machines, which all the parties agree are non-compliant with section 301. Restated, to grant plaintiffs' injunction would force Allegheny County to either forego an election or to use voting machines that violate federal law. Clearly, either choice weighs against the public interest, particularly given that the electronic machines purchased by Allegheny County for use in the May 16, 2006, election have been certified as compliant with the mandates of section 301. As such, the public interest would best be served by denying plaintiffs' request for the injunctive relief they seek.