2013 COA 115

**Marilyn MARKS, Plaintiff–Appellee and Cross–Appellant,**

v.

**Scott GESSLER, in his official capacity as Colorado Secretary of State; Colorado Department of State; and Judd Choate, in his official capacity as a person representing or acting on behalf of the Colorado Department of State, Defendants–Appellants and Cross–Appellees.**

**Court of Appeals No. 12CA0549**

Colorado Court of Appeals, Div. II.

Announced August 1, 2013

---

5. Because we reverse on these grounds, we need not consider the Strudleys' remaining contentions on appeal.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S. 2012.

888

McGuire Baines, LLC, Robert A. McGuire, Jeffrey D. Baines, Denver, Colorado, for Plaintiff–Appellee and Cross–Appellant

John W. Suthers, Attorney General, Leeann Morrill, Assistant Attorney General, Denver, Colorado, for Defendants–Appellants and Cross–Appellees

Opinion by JUDGE CASEBOLT

¶ 1 In this case involving the filing of a citizen complaint under the Colorado Help America Vote Act, sections 1–1.5–101 to –106, C.R.S.2012 (state HAVA), and its federal counterpart, the Help America Vote Act, 42 U.S.C. §§ 15301–15545 (2006) (federal HAVA), defendants, Scott Gessler, in his official capacity as the Colorado Secretary of State (the secretary), the Colorado Department of State (CDOS), and Judd Choate, in his official capacity as a person representing or acting on behalf of the CDOS, appeal the district court's judgment in favor of plaintiff, Marilyn Marks. In that judgment the court held that defendants had erred in determin-

ing that Marks lacked standing to file an administrative complaint. In so concluding, the court held that a portion of the state HAVA dealing with standing, section 1–1.5–105(2)(b), C.R.S.2012, conflicted with the federal HAVA standing provision contained in 42 U.S.C. § 15512 (2006), and that the latter provision must control. The court also concluded that defendants had erred in failing to hold a hearing on Marks's complaint.

¶ 2 Marks cross-appeals, contending that the court erred in dismissing her 42 U.S.C. § 1983 (2006) claim against the secretary and Choate under C.R.C.P. 12(b)(5) for failure to state a claim upon which relief can be granted. We affirm.

## I. Background

¶ 3 Congress passed the federal HAVA in 2002 to improve the administration of federal elections. Title III of the federal HAVA establishes certain minimum requirements and authorizes financial assistance to states to use for numerous election-related reasons, including improvement of election administration and election systems, education of voters, training of election officials, and promoting accessibility to elections systems. See 42 U.S.C. § 15301 (2006).

¶ 4 Colorado adopted the state HAVA in 2003 to implement the changes required by the federal HAVA, to obtain federal funds, and to provide the CDOS with sufficient authority to ensure Colorado's compliance with the federal HAVA. § 1–1.5–101(2), C.R.S. 2012. In doing so, the General Assembly declared that "[i]n Colorado, the secretary of state is the chief state election official and, in that capacity, is charged by HAVA and existing state statutory provisions with responsibility for supervising the conduct of elections and for enforcing and implementing the provisions of HAVA and of this code." § 1–1.5–101(1)(h), C.R.S.2012.

¶ 5 Marks filed an administrative complaint with the secretary, alleging her belief that violations of Title III of the federal HAVA had occurred or were occurring in the 2010 general election conducted in Saguache County, Colorado. Without holding a hearing, defendants dismissed Marks's complaint for lack of standing. Defendants explained the decision in a letter to Marks, stating that Marks had not been personally aggrieved by or personally witnessed a violation of Title III of the federal HAVA, as required under section 1–1.5–105(2)(b), to file a state HAVA administrative complaint.

¶ 6 Marks then brought this action in the Denver District Court to obtain judicial review of the dismissal of her state HAVA administrative complaint. Her district court complaint set forth three claims for relief. The first claim sought judicial review, pursuant to sections 1–1.5–105(4), C.R.S.2012, and 24–4–106, C.R.S.2012, of the dismissal of her complaint. She contended that defendants' dismissal of her state HAVA administrative complaint based on standing grounds was erroneous. The second claim, brought under 42 U.S.C. § 1983, alleged that defendants, in their official capacities, had deprived Marks of a federal right to file a HAVA complaint, see 42 U.S.C. § 15512(a)(2)(B) (2006), and a federal right to receive a hearing on the record in connection with her HAVA complaint, see 42 U.S.C. § 15512(a)(2)(E) (2006). Marks's third claim requested the district court to determine, pursuant to section 1–1.5–103, C.R.S.2012, that a conflict existed between section 1–1.5–105(2)(b) and 42 U.S.C. § 15512(a)(2)(B) relative to standing requirements, and that the federal standard was controlling.

¶ 7 As relief, Marks sought an order reversing the secretary's dismissal of her administrative complaint and remanding the matter to the CDOS with instructions to provide her with a hearing on the record in accordance with section 1–1.5–105(2)(g), C.R.S.2012, or before a mutually agreed upon arbitrator in accordance with section 1–1.5–105(2)(j), C.R.S.2012. Marks also sought an order determining that a conflict exists between section 1–1.5–105(2)(b) and 42 U.S.C. § 15512(a)(2)(B). In addition, she sought an order directing the secretary to comply with the requirements of section 1–1.5–103 by submitting a report to the General Assembly explaining the conflict between the two statutes and suggesting language to resolve the conflict. Finally, Marks sought an award of her costs and expenses for bringing the district court action, including her reasonable

attorney fees as authorized by 42 U.S.C. §§ 1983 & 1988 (2006).

¶ 8 Defendants moved to dismiss all three claims under C.R.C.P. 12(b)(1) and (5). Specifically, defendants asserted that Marks lacked standing and had failed to state a claim for relief, and that the court lacked subject matter jurisdiction to declare the existence of a conflict between the state HAVA and the federal HAVA.

¶ 9 After Marks filed a response in opposition and defendants replied, the court issued an order on October 24, 2011, entitled "Order Denying Defendants' Motion to Dismiss" (original order). The original order dismissed Marks's 42 U.S.C. § 1983 claim for failure to state a claim and denied defendants' motion to dismiss the first and third claims. However, it also stated that defendants had erred in dismissing Marks's complaint on standing grounds and that she was entitled to a hearing.

¶ 10 Following the issuance of the original order, defendants filed an answer to Marks's complaint. Thereafter, the parties exchanged C.R.C.P. 26(a)(1) initial disclosures and requested a trial setting conference.

¶ 11 On February 2, 2012, the district court, acting sua sponte, issued an order entitled "Addendum to Court's Order of October 24, 2011" (addendum). The addendum stated that the court was clarifying its original order and determining that Marks "is entitled to a hearing on the issues she alleged in the [administrative] complaint." The court cited *City & County of Denver v. Board of Assessment Appeals*, 947 P.2d 1373, 1380 (Colo.1997) (a court reviewing under the Administrative Procedure Act has plenary authority to review and remand a case for further proceedings if it concludes that the agency has acted contrary to law), for its authority to act. The addendum concluded by stating that the "matter is remanded to the appropriate agency under the State Department and/or the Elections Division of the Colorado Department of State to conduct a hearing regarding Plaintiff's allegations in her [state HAVA administrative] complaint...."

¶ 12 Defendants then filed a motion for reconsideration, but, before the court could rule on that motion, they filed a notice of appeal with this court, and this appeal followed.

## II. Final Appealable Order

¶ 13 We first address Marks's contention that we lack jurisdiction to hear defendants' appeal. Specifically, she argues that the district court's original order, not the addendum, was a final appealable order because it disposed of all three claims for relief raised in her complaint. According to Marks, the addendum merely clarified rather than modified the original order and, thus, had no legal effect on the parties' rights. Consequently, because defendants did not file a timely appeal from the original order, Marks argues that we must dismiss the appeal for lack of jurisdiction. We disagree.

### A. Law

¶ 14 "The timely filing of a notice of appeal is a jurisdictional prerequisite to appellate review." *In re Marriage of Buck*, 60 P.3d 788, 789 (Colo.App.2002). At the time this appeal was filed, C.A.R. 4(a) required that a notice of appeal in a civil case be filed "within forty-five days of the date of the entry of the judgment, decree, or order from which the party appeals." The period begins to run when a "final judgment" is entered. *Goodwin v. Homeland Cent. Ins. Co.*, 172 P.3d 938, 943 (Colo.App.2007).

¶ 15 Our jurisdiction is limited to the review of final orders and judgments. § 13–4–102(1), C.R.S.2012; C.A.R. 1(a); *Arevalo v. Colo. Dep't of Human Servs.*, 72 P.3d 436, 437 (Colo.App.2003). An order is final if it ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceeding. In addition, a final order is one that prevents further proceedings. *Luster v. Brinkman*, 250 P.3d 664, 666 (Colo. App.2010) (citing *Scott v. Scott*, 136 P.3d 892, 895 (Colo.2006)); *see Cyr v. Dist. Court*, 685 P.2d 769, 771 (Colo.1984). "In determining whether an order is final, we look to the legal effect of the order rather than its form."

*Luster,* 250 P.3d at 666 (citing *Levine v. Empire Sav. & Loan Ass'n,* 192 Colo. 188, 189, 557 P.2d 386, 387 (1976)).

■ ¶ 16 "Generally, the denial of a motion to dismiss pursuant to C.R.C.P. 12(b) is not a final order and, therefore, is not" immediately reviewable. *Awad v. Breeze,* 129 P.3d 1039, 1045 (Colo.App.2005) (citing *Feigin v. Digital Interactive Assocs., Inc.,* 987 P.2d 876, 880 (Colo.App.1999)); *see* § 13–4–102, C.R.S.2012.

### B. Application

■ ¶ 17 Here, the original order was not an appealable final judgment because it did not fully decide the merits of the case, end the action, and prevent further proceedings. The order was entitled "Order Denying Defendant's Motion to Dismiss," and it concluded by stating that defendants' "motion to dismiss is denied." Despite this language, the original order actually granted defendants' motion in part and dismissed Marks's second claim for relief—her 42 U.S.C. § 1983 claim. The order denied defendants' motion to dismiss as to Marks's two remaining claims, but in doing so, made some merits determinations. With regard to Marks's third claim, the original order stated, "[T]he state and federal [HAVA] provisions conflict concerning who has standing to file an administrative complaint. [T]herefore, the provisions of the federal act control." Regarding her first claim, the order stated that "because [Marks] requested a hearing in her complaint filed with the Colorado Department of State in April of 2011, she is entitled to a hearing on the issues she alleged in the complaint."

¶ 18 Unlike the addendum, however, the original order did not expressly remand the action to the agency to conduct a hearing regarding the allegations Marks set forth in her administrative complaint. Thus, it did not afford Marks a remedy. *See, e.g., Kennedy v. Gillam Dev. Corp.,* 80 P.3d 927, 929 (Colo.App.2003) (award of attorney fees is not a final appealable order until the amount of fees has been established). Hence, it did not end the action and prevent further proceedings. In addition, the court stated in the addendum that it had "plenary authority to

review and remand a case for further proceedings if it concludes that the agency has acted contrary to law." The court did not cite this authority to decide the merits of the issues and remand the case in the original order.

¶ 19 Considering that the denial of a motion to dismiss is not typically a final appealable order, and absent language expressly remanding the action to the CDOS, we cannot say that the court's original order disposed of the entire litigation on the merits.

¶ 20 We are not persuaded to the contrary by *Hatten–Gonzales v. Hyde,* 579 F.3d 1159 (10th Cir.2009), on which Marks relies to support her assertion that the addendum is not the final appealable judgment because it merely interprets, implements, or clarifies the original order.

¶ 21 In *Hatten–Gonzales,* the Tenth Circuit Court of Appeals held that, because the order at issue merely enforced and clarified, but did not modify, the district court's previous injunction, it was not a separate appealable injunction, and thus, the appellate court lacked jurisdiction to review the latter order. *Id.* at 1171. At issue in that case were a 1998 order and a subsequent 2008 order. *Id.* at 1169–70. The court concluded that the 1998 order was an injunction for jurisdictional purposes even though the order did not technically comply with the applicable federal rule. *Id.* at 1169. The court noted with approval the district court's statement that "[i]t appears beyond any reasonable dispute that both the nature of the lawsuit and the terms of the [1998 order] contemplate continued, injunctive relief." *Id.*

¶ 22 Here, in contrast, the nature of an order denying a motion to dismiss weighs against a finding that the original order was a final appealable judgment. *See Awad,* 129 P.3d at 1045. Furthermore, unlike the injunction in *Hatten–Gonzales,* the court's original order here did not clearly provide a remedy and did not prevent further proceedings. In addition, although the addendum stated that the court issued the order "to clarify" the original order, we are not bound by the district court's characterization of its order. *Cf. Trans Cent. Airlines, Inc. v. Pe-*

*ter J. McBreen & Assocs., Inc.,* 31 Colo.App. 71, 73, 497 P.2d 1033, 1034–35 (1972) ("[C.R.C.P.54(b) ] certification by the trial court is not binding upon the appellate courts.").

¶ 23 For these reasons, we conclude that the original order was not a final appealable judgment and that the addendum was the only order subject to appeal. Hence, because defendants timely filed their notice of appeal from the addendum, we have jurisdiction to consider their appeal. *See Goodwin,* 172 P.3d at 943.

### III. Judicial Review Under the Administrative Procedure Act

¶ 24 Defendants assert that the district court's jurisdiction over the claims set forth in Marks's judicial complaint arose solely under section 1–1.5–105, C.R.S.2012, not under the State Administrative Procedure Act, §§ 24–4–101 to –108, C.R.S. 2012 (APA), and that the district court erred in proceeding under the APA to summarily reverse the secretary's dismissal of Marks's administrative complaint and remand the case for further proceedings. Specifically, they contend that the district court was barred from exercising any plenary authority granted under the APA to remand the case for further administrative proceedings, *see City & County of Denver,* 947 P.2d at 1380 ("In review of administrative proceedings under section 24–4–106(7)[, C.R.S.2012], we have plenary authority to review and remand a case for further proceedings if we determine that the agency has acted contrary to law."), because sections 1–1.5–105(3)(b)–(c), C.R.S.2012, plainly state that the APA is not applicable to a claim brought under the state HAVA. Rather, they contend that Marks's claim is governed only by the rules of procedure generally applicable to civil cases brought in district court. We disagree.

### A. Standard of Review

¶ 25 Whether the APA procedures for judicial review of an administrative proceeding are applicable to a claim brought under section 1–1.5–105 presents issues of statutory interpretation, which we review de novo.

*Fischbach v. Holzberlein,* 215 P.3d 407, 409 (Colo.App.2009) (citing *Bryant v. Cmty. Choice Credit Union,* 160 P.3d 266, 274 (Colo.App.2007)).

¶ 26 Our primary objective in construing a statute is to effectuate the intent of the General Assembly. *Specialty Rests. Corp. v. Nelson,* 231 P.3d 393, 397 (Colo. 2010). If the statutory language is clear, we interpret the statute according to its plain and ordinary meaning without resort to other statutory construction aids. *Id.*

### B. Law
#### 1. APA

¶ 27 Pursuant to section 24–4–107, C.R.S. 2012, the APA applies to every agency of the state having statewide territorial jurisdiction. *Colo. Ground Water Comm'n v. Eagle Peak Farms, Ltd.,* 919 P.2d 212, 216 (Colo.1996).

¶ 28 Section 24–4–106 governs judicial review of agency action, including rulemaking and adjudication. *Colo. Ground Water Comm'n,* 919 P.2d at 216. Section 24–4–106(1), C.R.S.2012, states that "[i]n order to assure a plain, simple, and prompt judicial remedy to persons or parties adversely affected or aggrieved by agency actions, the provisions of this section shall be applicable." Section 24–4–106(2), C.R.S.2012, provides that "[f]inal agency action under this or any other law shall be subject to judicial review as provided in this section. . . ."

¶ 29 "Generally, the APA serves as a gap-filler, and its provisions apply to agency actions unless they conflict with a specific provision of the agency's statute or another statutory provision preempts the provisions of the APA." *V Bar Ranch LLC v. Cotten,* 233 P.3d 1200, 1205 (Colo.2010) (quoting *Well Augmentation Subdist. of Cent. Colo. Water Conservancy Dist. v. City of Aurora,* 221 P.3d 399, 417 (Colo.2009)). "Therefore, if the APA is applicable to a particular agency, both the APA and statutes specific to that agency should be read together and harmonized to the extent possible; however, if a provision of the APA and the agency's statute conflict, the agency-specific provision controls." *Id.; see also* § 24–4–107, C.R.S.2012 ("[W]here there is a conflict be-

tween this article and a specific statutory provision relating to a specific agency, such specific statutory provision shall control as to such agency.").

## 2. State HAVA

¶ 30 Section 1–1.5–105(3) of the state HAVA provides in relevant part:

(b) Proceedings for the resolution of a complaint brought pursuant to this section shall not be considered an adjudication under article 4 of title 24, C.R.S. [2012]; and

(c) The procedures created by this section shall constitute the exclusive administrative remedy for a violation of Title III of HAVA.

For ease of discussion, we label section 1–1.5–105(3)(b) the "adjudication clause," and section 1–1.5–105(3)(c) the "exclusive administrative remedy clause."

¶ 31 Section 1–1.5–105(4) of the state HAVA provides:

Any person aggrieved by a final determination by the secretary acting pursuant to paragraph (i) of subsection (2) of this section may appeal the secretary's determination to the district court in and for the city and county of Denver within thirty days of the date of the determination.

For ease of discussion, we label section 1–1.5–105(4) the "appeal clause."

## C. Application

■ ¶ 32 As an initial matter, the CDOS clearly meets the APA's definition of a state agency. *See* § 24–4–107. Moreover, defendants do not dispute that the secretary's dismissal of Marks's complaint for lack of standing constituted a final determination on the complaint pursuant to section 1–1.5–105(2)(i), C.R.S.2012, and therefore, the decision was appealable to the district court under the appeal clause.

¶ 33 Accordingly, the issue is whether the adjudication and exclusive administrative remedy clauses preempt the provisions of the APA and thus render the judicial review procedures of the APA inapplicable to Marks's appeal of the secretary's dismissal, or whether those provisions conflict with the

provisions of the APA. *See V Bar Ranch LLC,* 233 P.3d at 1205. We now turn to those issues.

¶ 34 Defendants assert that, because the adjudication clause precludes Colorado's administrative HAVA complaint proceedings from being "considered an adjudication under" the APA, the secretary's final determination of an administrative complaint cannot be considered a final agency action and, thus, is not subject to judicial review under the APA. Hence, the argument proceeds, the district court did not have plenary authority to review and remand the case for further proceedings if it concluded that the agency had acted contrary to law. *See City & Cnty. of Denver,* 947 P.2d at 1380. Defendants base this conclusion on their contention that, under the APA, an adjudication is a procedural prerequisite to every agency action. Thus, if an agency's proceedings are not considered an adjudication under the APA, any resulting order cannot be considered a final agency action reviewable under the APA. We are not persuaded.

¶ 35 The APA defines "action" as "the whole or any part of any agency rule, order, interlocutory order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." § 24–4–102(1), C.R.S.2012. An "order" is defined under the APA as "the whole or any part of the final disposition . . . by any agency in any matter other than rule-making." § 24–4–102(10). It defines "adjudication" as "the procedure used by an agency for the formulation, amendment, or repeal of an order . . . ." § 24–4–102(2).

¶ 36 The adjudication clause does not state that the proceedings resulting in the resolution of a state HAVA administrative complaint shall not be considered a final agency action. The clause also does not state that the resolution of a state HAVA administrative complaint shall not be considered an order. In other words, the plain language of the adjudication clause does not evince intent on the part of the legislature that the secretary's final determination should not be considered an action under the APA. The General Assembly could have included such language, but it did not. *See Specialty Rests. Corp.,* 231 P.3d at 397 ("[W]e will not

construe a statute in a manner that assumes the General Assembly made an omission; rather, the General Assembly's failure to include particular language is a statement of legislative intent.").

¶ 37 Section 24–4–105(1), C.R.S.2012, of the APA provides that, "[i]n order to assure that all parties to any agency adjudicatory proceeding are accorded due process of law, the provisions of this section shall be applicable." Section 24–4–105 then specifies numerous procedural requirements that an agency must observe and enumerates significant rights and obligations that parties have in an adjudicatory proceeding. *See* § 24–4–105(2) to –105(16), C.R.S.2012.

¶ 38 When considered in conjunction with section 24–4–105, we conclude that the purpose of the adjudication clause prohibiting state HAVA administrative proceedings from being considered an adjudication under the APA is to spare the secretary and persons filing state HAVA administrative complaints from having to observe the numerous, and somewhat complex, procedural requirements contained in section 24–4–105, and to curtail the administrative rights and obligations that parties would ordinarily have in adjudicatory proceedings.

¶ 39 We reject defendants' assertion that, if a statute precludes the application of the administrative procedures provided under section 24–4–105, it necessarily precludes judicial review under the APA. Defendants have not provided any authority to support this assertion, and we have located none. Even so, they contend that, based on the APA's definitions of "action" and "adjudication," an adjudication is a procedural prerequisite to every agency action. However, the APA defines "action" without reference to "adjudication." *See* § 24–4–102(1). In addition, the judicial review section of the APA does not once use the term "adjudication." *See* § 24–4–106. The prerequisite for judicial review under section 24–4–106 is a final agency action, not a final agency adjudication. *See* § 24–4–106(2), (4), C.R.S.2012.

¶ 40 Defendants further assert that, because the state HAVA exclusive administrative remedy clause states that the proce-

dures included in the state HAVA constitute the only *administrative remedy* available to a complainant, those procedures also offer the exclusive judicial remedy available under the appeal clause. The exclusive administrative remedy clause, however, does not refer to a complainant's available judicial remedies; it refers only to the procedures that constitute the administrative remedy for a violation of Title III of the federal HAVA. An administrative remedy is distinct from a judicial remedy. *See Thomas v. F.D.I.C.*, 255 P.3d 1073, 1077 (Colo.2011) ("The doctrine of administrative exhaustion requires a party to pursue available statutory administrative remedies before obtaining judicial review of a claim."). *Black's Law Dictionary* defines an "administrative remedy" as "[a] nonjudicial remedy provided by an administrative agency." *Black's Law Dictionary* 1407 (9th ed. 2009). It defines a "judicial remedy" as "[a] remedy granted by a court." *Id.* at 1408. Thus, the plain meaning of "administrative remedy" does not include a judicial remedy. *See People v. Rice*, 198 P.3d 1241, 1244 (Colo. App.2008) (using a dictionary definition to determine the plain and ordinary meaning of a statutory term).

¶ 41 Our interpretation is further supported by the appeal clause, which allows a person aggrieved by a final determination of the secretary to appeal the decision to the district court and, thus, potentially obtain a judicial remedy. Accordingly, the exclusive administrative remedy clause does not limit an aggrieved party's judicial remedies.

¶ 42 Furthermore, the sequencing and placement of the particular language in section 1–1.5–105 reinforces our view. The exclusive administrative remedy clause follows all of the administrative procedures listed in section 1–1.5–105(2). The appeal clause immediately follows the exclusive administrative remedy clause and is the final provision in section 1–1.5–105. It would be illogical for the General Assembly to have placed the language in the exclusive administrative remedy clause before the appeal clause if it intended for the exclusive administrative remedy clause to limit both the administrative and judicial remedies available to aggrieved parties.

¶ 43 Thus, the adjudication and exclusive administrative remedies clauses exclude only the *administrative procedure provisions* set forth under section 24–4–105 of the APA. *See* § 24–4–102(2) (defining "adjudication" as "the *procedure* used by an agency for the formulation, amendment, or repeal of an order") (emphasis added). They do not limit the availability of judicial remedies. In other words, at the agency level, a person filing a state HAVA administrative complaint is only entitled to the administrative procedures and rights included in the state HAVA statute itself, and is not entitled to or burdened by the additional administrative procedures, rights, and obligations provided under the APA. *See* § 24–4–105(1) to –105(16).

¶ 44 Furthermore, if defendants are correct in their assertion that the APA is not applicable in the district court, the next logical question would be to inquire how the appeal should proceed. Nowhere in the appeal clause is there any indication that the proceeding should encompass a de novo factual determination of the issues by the district court. The language "appeal of the secretary's determination" suggests otherwise.

¶ 45 In sum, we conclude that, although the APA rules and procedures do not apply to the secretary's resolution of a state HAVA administrative complaint at the agency level, the APA does apply to judicial review in the district court of the secretary's determination.

5¶ 46 As stated above, the CDOS is a state agency under the APA's definition. Furthermore, the secretary's dismissal of Marks's administrative complaint for lack of standing satisfied section 24–4–106(2)'s requirement that there be a final agency action in order to receive judicial review. *See Chittenden v. Colo. Bd. of Soc. Work Exam'rs*, 2012 COA 150, ¶ 26, 292 P.3d 1138 ("For agency action to be final pursuant to section 24–4–106(2), it must (1) mark the consummation of the agency's decision-making process and not be merely tentative or interlocutory in nature, and (2) constitute an action by which rights or obligations have been determined or from which legal consequences will flow.").

¶ 47 Thus, the district court did not err in considering Marks's first and third claims under the APA's principles of judicial review. *See V Bar Ranch LLC*, 233 P.3d at 1205. Accordingly, it had plenary authority to review and remand this case for further proceedings if it concluded that the agency acted contrary to law. *City & Cnty. of Denver*, 947 P.2d at 1380.

¶ 48 In light of our determination, we need not address the potential application of C.R.C.P. 106(a)(4) to this proceeding.

## IV. Sua Sponte Grant of Summary Relief

¶ 49 Defendants assert that the district court erred in granting affirmative relief to Marks on her first and third claims. They contend that the district court was not empowered to grant judgment on the pleadings or summary judgment in favor of Marks absent a motion requesting such relief, especially where, as here, there are disputed issues of material fact. We reject these contentions.

### A. Standard of Review and Law

¶ 50 As an initial matter, we agree with the parties that the district court effectively granted summary judgment in favor of Marks with regard to her first and third claims for relief.

¶ 51 The propriety of summary judgment presents an issue of law that we review de novo. *Newflower Mkt., Inc. v. Cook*, 229 P.3d 1058, 1061 (Colo.App.2010). Entry of summary judgment is appropriate only where the pleadings and supporting documents clearly demonstrate that no disputed issue of material fact exists and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 570 (Colo. 2008).

¶ 52 Colorado authority supports, under some circumstances, a trial court's sua sponte entry of summary judgment. In *ISG, LLC v. Arkansas Valley Ditch Ass'n*, 120 P.3d 724 (Colo.2005), the supreme court affirmed the trial court's sua sponte entry of summary judgment dismissing the plaintiff's water court application. *Id.* at 731. The

court stated that "a technically flawed dismissal may be affirmed, if it was entered as a matter of law and the party that lost its claim had adequate opportunity but did not offer any evidence or argument on which the claim could have survived." *Id.* The court concluded that "[a]lthough sua sponte entry of summary judgment is unusual and might ordinarily constitute a prejudicial abuse of discretion, the water court had sufficient legal grounds on which to dismiss ISG's ... application either sua sponte or in response to a motion for summary judgment," and "ISG had sufficient opportunity in the water court to argue its theories and to present evidence on the [dispositive] issue.... " *Id.*

¶ 53 In support of its conclusion, the *ISG* court referenced *Union Insurance Co. v. Hottenstein,* 83 P.3d 1196 (Colo.App.2003). There, the defendant had filed a motion for summary judgment, and the trial court entered judgment for the defendant before giving the plaintiff an opportunity to respond. *Id.* at 1199. A division of this court nevertheless affirmed the entry of summary judgment, concluding that the premature entry of summary judgment was simply not prejudicial because the trial court's ruling was correct as a matter of law and the same result would have followed even had all the technicalities of the summary judgment process been followed. *Id.* at 1202.

¶ 54 In *Schwartz v. Owens,* 134 P.3d 455, 457 (Colo.App.2005), the trial court had sua sponte dismissed the plaintiff's complaint for failure to state a claim upon which relief could be granted. A division of this court affirmed the trial court's dismissal, stating that "even assuming that it was improper for the trial court to dismiss plaintiff's complaint sua sponte here, our own review of the statutory framework demonstrates that there was no possibility that this suit could go forward." *Id.* at 457–58.

¶ 55 As noted previously, "[i]n review of administrative proceedings under section 24–4–106(7), [a court has] plenary authority to review and remand the case for further proceedings if [it] determine[s] that the agency has acted contrary to law." *City & Cnty. of Denver,* 947 P.2d at 1380; *see also Zamarripa v. Q & T Food Stores, Inc.,* 929

P.2d 1332, 1342–43 (Colo.1997) ("Pursuant to section 24–4–106(7), agency action may be set aside if it was arbitrary or capricious, beyond the scope of the agency's authority, without substantial evidence based upon the record as a whole or otherwise not in accordance with the law.").

¶ 56 A court is not bound by an agency's action that misconstrues or misapplies the law. *E.g., Bostron v. Colo. Dep't of Pers.,* 860 P.2d 595, 599 (Colo.App.1993). "Rather, the court is to determine all questions of law, interpret the applicable statutes and state regulations, and apply such interpretation to the facts as duly found or established." *Id.* APA review of an agency action is based upon the agency record. *Colo. Ground Water Comm'n,* 919 P.2d at 216.

### B. Application

¶ 57 Here, the better practice would have been for the court to allow the parties to submit dispositive summary judgment motions or motions for judgment on the pleadings, and to explicitly determine whether there were genuine issues of material fact. However, the relevant part of the agency record was essentially before the court (the secretary's dismissal letter), and as we conclude below, the dispute between the parties did not require resolution of any factual conflicts. Instead, the dispute involved interpreting the statutory provisions in the state HAVA, determining whether there were conflicts between the state and federal HAVA provisions, and applying the law.

¶ 58 In our view, the same result would have occurred had the district court followed all the technicalities of the summary judgment process. The district court granted Marks affirmative relief on her first and third claims for relief. However, if there were no genuine issues of material fact with regard to these claims, and if she was entitled to a judgment on these claims as a matter of law, we do not perceive that any procedural irregularity would preclude entering summary judgment, especially because defendants were given a full opportunity to address the legal issues in their motion to dismiss and reply, and did in fact address the

merits of both claims. Furthermore, defendants did not identify any disputed issues of fact in the district court and, with one exception discussed below, have not attempted to do so in their appellate briefs.

¶ 59 Accordingly, that the district court proceeded essentially on summary judgment without a dispositive motion being filed does not constitute reversible error.

### V. Merits Review and Subject Matter Jurisdiction

¶ 60 Having determined that the court had authority to proceed on the merits without having a dispositive motion before it, we now turn to the merits of the court's ruling.

### A. Administrative Standing and Hearing

■ ¶ 61 We first consider whether the district court erred in concluding that defendants should not have dismissed Marks's state HAVA administrative complaint for lack of standing, and that she was entitled to a hearing on the issues she alleged in that complaint. The court stated that the federal and state requirements for standing to file an administrative HAVA complaint were in conflict, and therefore, the federal standing requirement controlled. It also ruled that Marks was entitled to a hearing. We agree with the district court.

¶ 62 Section 1–1.5–103 provides:

If the secretary or a court of competent jurisdiction determines there is a conflict between this article or any other provision of this code and any provision of HAVA, the provisions of HAVA and any rules promulgated thereunder shall control, and the secretary shall perform the duties and discharge the obligations contained in the federal act.

¶ 63 Federal HAVA provides that "[i]f a State receives any payment under a program under [HAVA], the State shall be required to establish and maintain Stated-based administrative complaint procedures which meet the requirements of paragraph (2)." 42 U.S.C. § 15512(a)(1) (2006). Requirement (B) of paragraph (2) provides that "any person who believes that there is a violation of any provision of [Title III] of [HAVA] (including a violation which has occurred, is occurring, or is about to occur) may file a complaint." § 15512(a)(2)(B).

¶ 64 The state HAVA statute provides that "any person who has either been personally aggrieved by or has personally witnessed a violation of Title III of HAVA that has occurred, is occurring, or that is about to occur, as applicable, [may] file a complaint ...." § 1–1.5–105(2)(b).

¶ 65 The federal and state provisions regarding who is authorized to file a complaint conflict because the Colorado rule is narrower than, and inconsistent with, the federal provision. Therefore, according to section 1–1.5–103 and 42 U.S.C. § 15512(a)(1), the federal statute must control.

¶ 66 Defendants point out that they controverted Marks's allegation in her district court complaint that she believed a violation of federal HAVA had occurred, was occurring, or was about to occur. However, defendants' contention that such a dispute is a factual dispute precluding summary judgment misses the mark. The issue presented by the motion to dismiss and Marks's response was whether the state or the federal standard controlled, and was not a factual dispute concerning Mark's belief regarding violations of federal HAVA. Instead, the issue was which legal standard was to control, which presents a legal issue, not a factual one. *See Fischbach,* 215 P.3d at 409.

¶ 67 The court's ruling was that defendants had applied an incorrect standard to determine whether Marks had standing to file a state HAVA administrative complaint. It would then be up to defendants, upon remand from the district court, to apply the correct standard and determine whether Marks believed that such a violation had occurred or was occurring, if her belief was truly controverted. In essence, it became defendants' obligation, as the agency finder of fact, to determine whether Marks indeed possessed such a belief and thus had standing to file her administrative complaint.

¶ 68 Moreover, because section 1–1.5–105(2)(g) provides for, "at the request of the complainant, a hearing on the record," the

district court did not err in concluding that Marks was entitled to a hearing.

### B. Subject Matter Jurisdiction

¶ 69 Defendants further assert that the district court lacked subject matter jurisdiction to determine whether a conflict existed between the state HAVA and the federal HAVA. Specifically, they argue that the plain language of section 1–1.5–103 does not confer jurisdiction on the Colorado district court but, rather, merely acknowledges that a court with proper jurisdiction is authorized to determine whether a conflict exists between state and federal law. They contend that only federal district courts have jurisdiction to make this determination. We reject this argument.

¶ 70 Article VI section 1 of the Colorado Constitution vests district courts with general jurisdiction. Article VI section 9 of the Colorado Constitution, titled "District courts jurisdiction," provides that "[t]he district courts shall be trial courts of record with general jurisdiction, and shall have original jurisdiction in all civil, probate, and criminal cases, except as otherwise provided herein, and shall have such appellate jurisdiction as may be prescribed by law."

¶ 71 "The district courts in Colorado are courts of general jurisdiction and have wide latitude in hearing and deciding issues of law." *In re A.W.*, 637 P.2d 366, 373 (Colo.1981). "These provisions of the Colorado Constitution confer unrestricted and sweeping jurisdictional powers in the absence of limiting legislation." *Id.* Furthermore, "[t]he absence of a statute or constitutional provision which specifically designates a forum or spells out standards for decision will not preclude exercise of a court's jurisdiction...." *Id.* In addition, although the General Assembly may limit jurisdiction, we will not interpret a statute to so limit a court's jurisdiction unless the limitation is explicit. *Id.* at 374.

¶ 72 Section 1–1.5–103 states that "[i]f the secretary or a court of competent jurisdiction determines there is a conflict between this article or any other provision of this code and any provision of [federal]

HAVA, the provisions of [federal] HAVA and any rules promulgated thereunder shall control...." This language does not explicitly preclude a Colorado district court from exercising jurisdiction. Furthermore, the fact that the statute does not specifically state that a Colorado district court has jurisdiction is not determinative because the Colorado Constitution confers unrestricted jurisdiction on district courts absent limiting legislation. *See A.W.*, 637 P.2d at 373.

¶ 73 The authority that defendants offer in support of their assertion that federal district courts have exclusive jurisdiction to determine the existence of a conflict is unavailing. They cite 42 U.S.C. § 15511 (2006), which provides:

> The Attorney General may bring a civil action against any State or jurisdiction in an appropriate United States District Court for such declaratory and injunctive relief (including a temporary restraining order, a permanent or temporary injunction, or other order) as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements under sections 15481, 15482, and 15483 of this title.

¶ 74 Defendants' reliance on this statute is misplaced because, by its express language, it only allows the United States Attorney General to bring a claim in a federal district court to enforce the requirements of 42 U.S.C. §§ 15481, 15482, and 15483. However, the issue here is whether 42 U.S.C. § 15512(a)(2)(B) and section 1–1.5–105(2)(b) conflict. 42 U.S.C. § 15511 does not provide the Attorney General with authority to bring a suit to enforce the state-based administrative complaint procedures required under § 15512 and, thus, is inapposite here. And defendants cite no provision of the federal HAVA that would preclude a state court from exercising jurisdiction to determine whether a conflict exists between the state and federal HAVA provisions.

¶ 75 Accordingly, we conclude that the district court had subject matter jurisdiction under section 1–1.5–103 to determine whether there is a conflict between §§ 15512(a)(2)(B) and 1–1.5–105(2)(b).

## C. Additional Substantive Arguments

¶ 76 Defendants challenged the district court's subject matter jurisdiction over Marks's third claim in their motion to dismiss. On appeal, however, they also contend that, had they conceived of the possibility that the court would summarily grant Marks affirmative relief on this claim, they would have advanced substantive legal arguments as to why the state HAVA administrative procedures do not conflict with the federal HAVA requirements, instead of simply making the above jurisdictional argument. Were they able to demonstrate or advance a convincing argument that the statutes do not conflict, we would agree that reversal would be required. But, tellingly, they do not offer any such substantive arguments on appeal, and the plain language of the statutes would refute any such argument.

¶ 77 Accordingly, we are further satisfied that defendants had an adequate opportunity to present legal argument on this issue before the district court decided the merits. *See ISG, LLC,* 120 P.3d at 730.

¶ 78 In sum, the motion to dismiss defendants filed, together with Marks's response and defendants' reply, provided defendants with a sufficient opportunity to develop their legal arguments regarding Marks's first and third claims for relief. Further, no genuine questions of material fact exist here. Under the circumstances, we cannot say that the district court's sua sponte entry of summary judgment was prejudicial because, even had the court awaited the filing of a motion, the ultimate result would have been the same. *See Hottenstein,* 83 P.3d at 1202; *Schwartz,* 134 P.3d at 457–58. The court correctly decided that defendants had acted contrary to the law, and thus, the court had authority under the APA to remand the case for further proceedings. *See City & Cnty. of Denver,* 947 P.2d at 1380.

## VI. Standing for Judicial Review

¶ 79 Defendants contend that Marks lacked standing to maintain her first claim for relief in which she sought judicial review of the administrative determination. Defendants assert that, even if the federal HAVA gave Marks a right to file an administrative complaint, she nevertheless lacked standing to seek judicial review because she did not suffer an injury in fact to a legally protected interest and, therefore, was not personally aggrieved by defendants' dismissal of her administrative complaint. Marks agreed at oral argument that she must satisfy that test. We reject defendants' contentions.

### A. Standard of Review and Law

¶ 80 Standing concerns a court's subject matter jurisdiction, and thus, we review the issue de novo. *Friends of Black Forest Reg'l Park, Inc. v. Bd. of Cnty. Comm'rs,* 80 P.3d 871, 876 (Colo.App.2003). In determining whether a plaintiff has alleged an injury sufficient to confer standing, we must accept as true the allegations set forth in the complaint and may weigh other evidence supportive of standing. *Dunlap v. Colo. Springs Cablevision, Inc.,* 829 P.2d 1286, 1289 (Colo.1992).

¶ 81 A plaintiff must have standing to bring a case. *Ainscough v. Owens,* 90 P.3d 851, 855 (Colo.2004). "In Colorado, parties to lawsuits benefit from a relatively broad definition of standing." *Id.* Thus, the standing test "has traditionally been relatively easy to satisfy." *Id.* at 856.

¶ 82 To establish standing, a plaintiff must satisfy two criteria. First, the plaintiff must have suffered an injury in fact, and second, this harm must have been to a legally protected interest. *Wimberly v. Ettenberg,* 194 Colo. 163, 168, 570 P.2d 535, 539 (1977).

¶ 83 The injury in fact prong does not require that the plaintiff demonstrate an economic injury; harm to intangible values is sufficient. *Friends of the Black Forest Reg'l Park, Inc.,* 80 P.3d at 877. Moreover, "[d]eprivations of many legally created rights, although themselves intangible, are nevertheless injuries-in-fact." *Ainscough,* 90 P.3d at 856; *accord Cloverleaf Kennel Club, Inc. v. Colo. Racing Comm'n,* 620 P.2d 1051, 1058 (Colo.1980) ("It is ... well settled that the injury in fact conferring standing may not only be intangible, but may exist solely by virtue of statutes creating legal rights the invasion of which creates

standing." (internal citations and quotations omitted)).

¶ 84 The second prong of the test requires that the plaintiff have a legal interest protecting against the alleged injury. *Ainscough,* 90 P.3d at 856. Thus, the relevant inquiry is whether the plaintiff has a claim for relief under the constitution, the common law, a statute, or a rule or regulation. *Id.*

¶ 85 Finally, in addition to the jurisdictional prerequisite of standing, the right to judicial review of administrative action under the APA is limited to those "persons or parties adversely affected or aggrieved by agency actions...." *See CF & I Steel Corp. v. Colo. Air Pollution Control Comm'n,* 199 Colo. 270, 277, 610 P.2d 85, 90 (1980). In the context of administrative action, the injury in fact element does not require that a party suffer actual injury, as long as the party can demonstrate that the administrative action threatens to cause an injury. *Bd. of Cnty. Comm'rs v. Colo. Oil & Gas Conservation Comm'n,* 81 P.3d 1119 (Colo.App.2003).

### B. Application

¶ 86 Here, defendants assert that Marks does not have standing to bring a judicial claim because she does not have standing under federal law. Colorado, however, is not bound by federal standing precedent. *See Friends of the Black Forest Reg'l Park, Inc.,* 80 P.3d at 877 ("Colorado standing jurisprudence does not duplicate the federal law...."); *City of Greenwood Vill. v. Petitioners for the Proposed City of Centennial,* 3 P.3d 427, 436 n. 7 (Colo.2000) ("Because Colorado standing doctrine is rooted in our own constitution and rules of judicial self-governance, Colorado standing jurisprudence does not duplicate all the features of federal standing doctrine."). In addition, although Colorado courts frequently consult federal cases as persuasive authority on standing, they do so only where Colorado law is unclear as to the issue. *See Maurer v. Young Life,* 779 P.2d 1317, 1324 n. 10 (Colo. 1989); *Friends of the Black Forest Reg'l Park, Inc.,* 80 P.3d at 877. Here, the law is clear, and we thus need not address whether Marks has standing under federal law.

¶ 87 Marks sufficiently alleged an injury in fact. She alleged in her district court complaint that the dismissal of her state HAVA administrative complaint deprived her of her state and federal statutory rights to use Colorado's administrative complaint procedure to remedy violations of the federal HAVA. She also alleged that she was deprived of her right to a hearing on the record in connection with her state HAVA administrative complaint. As we concluded above, any person who believes a violation of Title III of the federal HAVA has occurred has a right to file a complaint. Also, section 1–1.5–105(2)(g) provides a complainant with the right to a hearing on the record. Accordingly, because Marks alleged that defendants deprived her of these legally protected interests, she has alleged a sufficient injury in fact. *Ainscough,* 90 P.3d at 856; *Cloverleaf Kennel Club, Inc.,* 620 P.2d at 1058.

¶ 88 Furthermore, the fact that Marks alleged in her administrative complaint that she believes violations of Title III of the federal HAVA occurred during the 2010 general election also supports our conclusion that she has alleged an injury in fact. Contrary to defendant's assertions, in conducting our de novo standing review, we may examine record evidence outside of the complaint. *Dunlap,* 829 P.2d at 1289 (stating that courts may weigh other evidence supportive of standing).

¶ 89 Marks also suffered an injury to a legally protected interest. Section 1–1.5–105(2)(b) provides Marks with a right to file a state HAVA complaint, and section 1–1.5–105(2)(g) states that a complainant is entitled to a hearing on the record. She asserted that defendants violated these provisions by dismissing her complaint for lack of standing and without providing her with a hearing. *See Bd. of Cnty. Commis,* 81 P.3d at 1123 ("[P]laintiff must demonstrate the existence of a legal right or interest that arguably has been violated by the conduct of the other party.").

¶ 90 In addition, Marks has a right under section 24–4–106(2) of the APA to seek judicial review of the agency action. Defendants' dismissal of her complaint for lack of stand-

ing violated her right to file a state HAVA complaint, and therefore, she was adversely affected by the decision. *See Bd. of Cnty. Commis v. State Bd. of Soc. Servs.*, 186 Colo. 435, 442, 528 P.2d 244, 248 (1974) (concluding that judicial review of a final agency action is limited to those parties to the proceeding before the administrative agency whose rights, privileges, or duties are adversely affected by the decision).

¶ 91 Likewise, section 1–1.5–105(4) also provides Marks with a right to seek judicial review of the dismissal. That provision states that "any person aggrieved by a final determination by the secretary ... may appeal the secretary's determination to the district court...." As discussed above, the dismissal of Marks's state HAVA complaint constituted a final determination on the matter, and Marks was aggrieved by the action.

¶ 92 Thus, we conclude that Marks has satisfied the jurisdictional prerequisites for standing, as well as the standing requirements to obtain judicial review of an agency action under the APA and HAVA.

## VII. Cross–Appeal—Marks's 42 U.S.C. § 1983 Claim

¶ 93 Marks contends that the district court erred in dismissing her § 1983 claims against the secretary and Choate. Specifically, she asserts that 42 U.S.C. § 15512(a)(2)(B) and 15512(a)(2)(E) create federal rights enforceable under 42 U.S.C. § 1983. We conclude that the claim was properly dismissed, albeit on grounds different from those relied on by the district court.

### A. Standard of Review

¶ 94 We review de novo a district court's dismissal for failure to state a claim. *Walker v. Van Laningham*, 148 P.3d 391, 394 (Colo.App.2006). We must view the allegations in the complaint as true and in the light most favorable to the plaintiff. *Monez v. Reinertson*, 140 P.3d 242, 244 (Colo.App. 2006); *Nat'l Camera, Inc. v. Sanchez*, 832 P.2d 960, 963 (Colo.App.1991). The complaint can only be dismissed if it appears that the plaintiff is entitled to no relief under any set of facts that may be proved in support of

the claims. *Pub. Serv. Co. v. Van Wyk*, 27 P.3d 377, 385–86 (Colo.2001).

### B. Law

¶ 95 42 U.S.C. § 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Under § 1983, to state a viable claim for relief, a plaintiff need only establish that the defendant deprived him of a federal right and that the defendant acted under color of state law. *Monez*, 140 P.3d at 244; *Nat'l Camera*, 832 P.2d at 966.

### C. District Court's Ruling

¶ 96 In its original order, the district court dismissed Marks's claim against defendants. Relying on *Will v. Michigan Department of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the court concluded that defendants were not persons within the meaning of § 1983, and therefore, Marks was not entitled to bring a § 1983 claim against them. The district court stated that "neither states nor state officials acting in their official capacities are 'persons' within the meaning of § 1983."

¶ 97 Defendants concede on appeal, and we agree, that the district court erred in dismissing the § 1983 claim on the basis of *Will*. Under *Will*, when sued for prospective injunctive relief, government officials in their official capacities are "persons" under § 1983. *Nat'l Camera, Inc.*, 832 P.2d at 966 (citing *Lucchesi v. State*, 807 P.2d 1185 (Colo.App. 1990)).

¶ 98 Here, the relief sought, declaratory relief and attorney fees, is prospective in nature. *Lucchesi*, 807 P.2d at 1194 ("[A] a state officer may be sued in his official capacity under § 1983 if, as here, a plaintiff seeks

only declaratory or injunctive relief and attorney fees and does not seek any damages.").

¶ 99 Even so, defendants contend that the district court did not err in dismissing the claims because § 15512(a)(2)(B) and § 15512(a)(2)(E) do not create federal rights of action enforceable under § 1983. If that is a correct assertion, we will affirm. *See Steamboat Springs Rental & Leasing, Inc. v. City & Cnty. of Denver*, 15 P.3d 785, 786 (Colo.App.2000) ("An appellate court may affirm a correct judgment based on reasoning different from that relied on by the trial court."). Thus, we turn to whether these provisions are enforceable via § 1983 under the appropriate test.

### D. § 1983—Violation of Federal Right and Enforceability

¶ 100 Not all federal law violations are actionable under § 1983. *Monez*, 140 P.3d at 244. In *Blessing v. Freestone*, the Supreme Court emphasized that "a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997). The Court announced a two-part test. The first prong of the test considers whether there is a federal right, and the second prong considers whether that right is enforceable under § 1983. In deciding the first prong, the court created a three-factor test for determining whether a particular statutory provision gives rise to a federal right enforceable under § 1983:(1) "Congress must have intended that the provision in question benefit the plaintiff"; (2) "the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence"; and (3) "the statute must unambiguously impose a binding obligation on the States." *Id.* at 340–41, 117 S.Ct. 1353.

¶ 101 The Supreme Court later clarified the *Blessing* requirements, stating that only an "unambiguously conferred right" can support a cause of action brought under § 1983. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). "Accordingly, it is *rights*, not the broader or vaguer 'benefits' or 'interests,' that may be enforced" by § 1983. *Id.* Furthermore, "unless Congress speak[s] with a clear voice, and manifests an unambiguous intent to confer individual rights, federal funding provisions provide no basis for private enforcement by § 1983." *Id.* at 280, 122 S.Ct. 2268 (internal quotations omitted). "Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" *Alexander v. Sandoval*, 532 U.S. 275, 289, 532 U.S. 275, 149 L.Ed.2d 517 (2001) (quoting in part *California v. Sierra Club*, 451 U.S. 287, 294, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981)).

¶ 102 Thus, Congress must use "rights-creating language." *Gonzaga Univ.*, 536 U.S. at 287, 122 S.Ct. 2268. Such language must clearly impart an "individual entitlement" and have an "unmistakable focus on the benefited class." *Id.* (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 691, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)).

¶ 103 In contrast, when a statute "focuse[s] on 'the aggregate services provided by the State,' rather than 'the needs of any particular person,' it confer[s] no individual rights and thus [cannot] be enforced by § 1983." *Id.* at 282, 122 S.Ct. 2268 (quoting *Blessing*, 520 U.S. at 343, 117 S.Ct. 1353).

¶ 104 As an example of "individually focused" and "rights-creating" language, the Supreme Court in *Gonzaga* discussed Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d (2006), and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 (2006), both of which use the wording "[n]o person ... shall ... be subjected to discrimination." The Court compared this language to provisions of the Family Educational Rights and Privacy Act (FERPA) ("[n]o funds shall be made available" to any "educational agency or institution" which has a prohibited "policy or practice"), which it held "speak only in terms of institutional policy and practice, not individual instances of disclosure." *Gonzaga Univ.*, 536 U.S. at 287–88, 122 S.Ct. 2268. Hence, the Court concluded that the FERPA did not meet the first prong of *Blessing*.

¶ 105 Regarding the second prong, if a plaintiff demonstrates that a statute creates an individual right, there is a rebuttable presumption that the right is enforceable under § 1983. *Blessing*, 520 U.S. at 341, 117 S.Ct. 1353. However, dismissal is proper if Congress specifically foreclosed resort to § 1983. *Id.* Congress may do so expressly, through language in the statute itself, or impliedly, "by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Id.*

¶ 106 The parties have not provided, and we have not located, any case that directly addresses whether 42 U.S.C. § 15512(a)(2)(B) and 15512(a)(2)(E) create an enforceable individual right of action. Several cases, however, have addressed other provisions of HAVA and their enforceability under § 1983.

¶ 107 In *Sandusky County Democratic Party v. Blackwell*, the Sixth Circuit Court of Appeals held that 42 U.S.C. § 15482(a)(2) (2006) of HAVA creates a federal right to cast a provisional ballot, which is enforceable under § 1983. 387 F.3d 565, 572 (6th Cir. 2004). 42 U.S.C. § 15482(a)(2) states that, upon making the required affirmation, "the individual shall be permitted to cast a provisional ballot...." The court stated that the right-creating language of § 15482(a)(2) is unambiguous, and noted that the language of the section "mirrors the rights-creating language of Title VI of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972, which both state that '[n]o person ... shall ... be subjected to discrimination,'" both of which "create individual rights enforceable under section 1983." 387 F.3d at 572–73. The court also held that the right to cast a provisional ballot satisfied the other two factors articulated in *Blessing. Id.* at 573.

¶ 108 The *Sandusky* court went on to state that enforcement of the right under § 1983 was "not precluded by either the explicit language of HAVA, or by a comprehensive enforcement scheme incompatible with individual enforcement." *Id.* The court concluded that "HAVA's requirement that ... States wishing to receive certain types of federal funding ... provide administrative procedures by which citizen complaints may

be reviewed and resolved, [§ 15512], and its provision that the U.S. Attorney General may bring a civil action to enforce HAVA's requirements, [§ 15511]" do not indicate a congressional intention to prevent individual enforcement of the right to cast a provisional ballot. *Id.*

¶ 109 In *Taylor v. Onorato*, a federal district court addressed whether § 15481 of HAVA created a federal right. 428 F.Supp.2d 384, 386 (W.D.Pa.2006). Section 15481 provides that participating states must ensure that local voting jurisdictions have voting systems in place that comply with certain mandated features. *Taylor*, 428 F.Supp.2d at 386. The court concluded:

> [Section 15481] does not grant any private rights to an identifiable class of people. Rather, [it] imposes an obligation on the states and local jurisdictions to put in place a voting system that meets certain criteria. The voters as a whole may benefit from the mandates of [the section]. That is insufficient, however, to create a federal 'right' as that term is defined by the Supreme Court.

*Id.* at 387.

¶ 110 Finally, in *Ohio Republican Party v. Brunner*, the Sixth Circuit Court of Appeals held that the plaintiff had a substantial likelihood of success on its § 1983 claim seeking compliance with a provision of HAVA and, therefore, denied the defendant's motion to stay the district court's temporary restraining order (TRO). 544 F.3d 711, 720–721 (6th Cir.2008). The HAVA provision at issue in *Brunner* was 42 U.S.C. § 15483(a)(5)(B)(i) (2006), which states:

> The chief State election official and the official responsible for the State motor vehicle authority of a State shall enter into an agreement to match information in the database of the statewide voter registration system with information in the database of the motor vehicle authority to the extent required to enable each such official to verify the accuracy of the information provided on applications for voter registration.

¶ 111 Although the court did not go so far as to hold that this section creates a federal

right enforceable through § 1983, it concluded that the plaintiff was likely to succeed on the merits, and thus, the trial court did not err in entering an injunction. 544 F.3d at 720–21.

¶ 112 A dissenting judge in *Brunner* opined that § 15483(a)(5)(B)(i) focuses "on administration of federal elections and the duties of state *officials* to establish institutional mechanisms meeting certain criteria. Nothing in [this provision] contains the sort of rights-focused language that the Supreme Court has required to establish a privately enforceable right." *Id.* at 727–28 (Moore, J., dissenting).

¶ 113 In a per curiam opinion, the Supreme Court reversed. *Brunner v. Ohio Republican Party*, 555 U.S. 5, 129 S.Ct. 5, 172 L.Ed.2d 4 (2008). Citing *Gonzaga* and *Alexander*, the Court held that the plaintiffs "are not sufficiently likely to prevail on the question whether Congress has authorized the District Court to enforce [§ 15483(a)(5)(B)(i) ] in an action brought by a private litigant to justify the issuance of a TRO." *Id.*

### E.   Application

¶ 114 Here, Marks alleged in her district court complaint that, by dismissing her administrative complaint on state-law standing grounds, defendants had deprived her of a federally secured right, under 42 U.S.C. § 15512(a)(2)(B), to file a HAVA complaint using Colorado's administrative complaint procedure. She also asserted that, by dismissing her complaint, defendants had deprived her of her federally secured right, under 42 U.S.C. § 15512(a)(2)(E), to receive a hearing on the record in connection with her state HAVA complaint. Marks claimed that defendants were liable to her for the deprivation of these rights and requested the court award her attorney fees under 42 U.S.C. § 1988.

¶ 115 42 U.S.C. § 15512 of HAVA provides in relevant part:

(a) Establishment of State-based administrative complaint procedures to remedy grievances

(1) Establishment of procedures as condition of receiving funds

If a State receives any payment under a program under this chapter, the State shall be required to establish and maintain State-based administrative complaint procedures which meet the requirements of paragraph (2).

(2) Requirements for procedures

The requirements of this paragraph are as follows:

. . .

(B) Under the procedures, any person who believes that there is a violation of any provision of subchapter III of this chapter (including a violation which has occurred, is occurring, or is about to occur) may file a complaint.

. . .

(E) At the request of the complainant, there shall be a hearing on the record.

¶ 116 When viewed in isolation, these provisions may appear to speak in rights-creating language and indicate intent to benefit individuals who, like Marks, seek to remedy or prevent a violation of HAVA. However, we conclude that, when viewed in light of 42 U.S.C. § 15512(a)(1), these provisions do not unambiguously demonstrate a congressional intent to benefit complainants but, rather, simply dictate part of Colorado's obligations under the statute and speak only in terms of institutional policy and practice.

¶ 117 42 U.S.C. § 15512(a)(1) provides that "[i]f a State receives any payment under a program under [HAVA], the State shall be required to establish and maintain State-based administrative complaint procedures which meet the requirements of paragraph (2)." Clearly, this provision focuses on the entity regulated—the state—and its obligation to establish certain procedures as a condition of receiving federal funding. It does not focus on the individuals protected. Because § 15512(a)(1) focuses on the entity regulated and is a federal funding provision, it provides no basis for private enforcement under § 1983. *See Gonzaga*, 536 U.S. at 280–82, 122 S.Ct. 2268.

¶ 118 42 U.S.C. § 15512(a)(2)(B) and 15512(a)(2)(E) are incorporated into HAVA through 42 U.S.C. § 15512(a)(1). Although § 15512(a)(2)(B) and 15512(a)(2)(E) provide

that any person who believes there is a violation of Title III of HAVA may file a complaint and receive a hearing on the record, these are simply benefits of the state-based administrative scheme, not federal rights. These sections, like the provision at issue in *Brunner*, are part of a section that focuses on the duties of state officials to establish institutional mechanisms meeting certain criteria. *See Brunner*, 544 F.3d at 727 (Moore, J., dissenting). The sections here enumerate the criteria for an adequate administrative complaint system; they are not rights. In light of the entire section, the fact these provisions benefit Marks is not enough to unambiguously prove that Congress intended to confer a federal right presumptively enforceable under § 1983.

¶ 119 For example, in *Gonzaga*, the FERPA nondisclosure provision benefitted students; however, that alone was not enough to confer a federal right. *Gonzaga*, 536 U.S. at 283–84, 122 S.Ct. 2268. Additionally, the purpose of the provision at issue in *Brunner* was the prevention of voter fraud. *Brunner*, 544 F.3d at 713. Preventing fraudulent voting surely benefits the public, but such an incidental benefit is not enough to confer a federal right. *See Brunner*, 555 U.S. at 5, 129 S.Ct. 5. Accordingly, here, the fact that allowing persons to file a HAVA complaint and to have a hearing on the record benefits individuals by leading to a more fair and accurate election does not in and of itself suffice to establish a federal right enforceable under § 1983. *See Taylor*, 428 F.Supp.2d at 387.

¶ 120 Furthermore, § 15512(a)(2)(B) and 15512(a)(2)(E) are found in Title IV of HAVA. In addition to containing the state-based ·administrative procedures found in § 15512, Title IV also contains § 15511, which allows the United States Attorney General to bring a civil suit to enforce certain provisions of Title III. Title III establishes certain minimum requirements for the administration of federal elections. *See* 42 U.S.C. §§ 15481–15502. Sections 15511 and 15512 are part of the enforcement scheme of HAVA to ensure

that the substantive provisions of the act are followed. *Sandusky. Cnty. Democratic Party*, 387 F.3d at 573. Unlike § 15482(a)(2), for example, which permits an individual to cast a provisional ballot, the sections at issue here are not minimum requirements for the administration of an election. They are in place only to remedy the violation of a substantive rule. This is significant because it demonstrates that these provisions are a step removed from the rules created to help guarantee the right to vote. This further weighs against a finding that they create federal rights.

¶ 121 In sum, we conclude that 42 U.S.C. § 15512(a)(2)(B) and 15512(a)(2)(E) of the federal HAVA do not confer federal rights. Because these provisions do not confer federal rights, we need not address the remaining parts of the *Blessing* test.

¶ 122 In light of this disposition, we deny Marks's request for attorney fees on appeal under 42 U.S.C. § 1988 and C.A.R. 39.5.

¶ 123 The judgment is affirmed.

JUDGE STERNBERG * and JUDGE VOGT* concur.

---

* Sitting by assignment of the Chief Justice under the provisions of Colo. Const. art. I, § 5(3)and

§ 24–51–1105, C.R.S.2012.